# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL ADAMS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 17-0105-WS-B |
| ) | |
| INTERNATIONAL PAPER ) | |
| COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter comes before the Court on plaintiffs' Motion to Remand (doc. 11), and defendants' Motion to Dismiss and/or Strike Plaintiffs' Amended Complaint (doc. 16). The Motions have been extensively briefed, and are now ripe for disposition.[1]

**I.  Factual and Procedural Background.**

This action was brought by 248 individuals who own or occupy residential property located in the Africatown Community in Mobile County, Alabama, to recover for alleged environmental contamination caused by certain nearby industrial activities. The Complaint, which was originally filed in Mobile County Circuit Court, named International Paper Company and Bay Area Contracting, Inc. as defendants. Plaintiffs alleged that defendants had released Dioxins, Furans and related chemicals, as well as other hazardous and harmful chemicals and pollutants, from the International Paper property into the air, soil, surface water and/or groundwater of plaintiffs' properties and/or residences. On that basis, plaintiffs asserted 23 purely state-law claims sounding in theories of negligence, wantonness, trespass, public nuisance, private nuisance, failure to warn, fraud, outrage, strict liability, battery and assault.

---

[1] Also pending is defendant International Paper's Motion for Leave to File Supplemental Affidavit in Opposition to Plaintiffs' Motion to Remand (doc. 22), filed on the afternoon of May 1, 2017. In its discretion, the Court **grants** that Motion, and will consider the Declaration of Paul E. Weaver attached to same as Exhibit 1.

The relief sought by plaintiffs included, *inter alia*, compensatory damages for personal injuries and diminution in value of their real properties, as well as punitive damages and injunctive relief.

On March 6, 2017, International Paper filed a Notice of Removal (doc. 1) removing this action to this District Court. In doing so, International Paper predicated federal subject matter jurisdiction on the diversity provisions of 28 U.S.C. § 1332, reasoning that there was complete diversity of citizenship between plaintiffs and the only properly-joined defendant, and that the amount in controversy exceeded the sum of $75,000, exclusive of interest and costs. In its Notice of Removal, International Paper acknowledged that defendant Bay Area Contracting is an Alabama citizen for diversity purposes (just like plaintiffs), and is therefore non-diverse; however, International Paper insisted that Bay Area Contracting's citizenship is properly omitted from the § 1332 analysis because it was fraudulently joined. International Paper's position was that there was no possibility plaintiffs could prove a cause of action against Bay Area Contracting because that entity had never done business with International Paper or on the International Paper site. Alternatively, the Notice of Removal posited that this action was properly removable pursuant to the Class Action Fairness Act of 2005 ("CAFA") because it is a mass action, the minimal diversity requirement is satisfied, and the matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs.

On March 14, 2017, a mere eight days after removal to federal court, plaintiffs took two significant steps. First, they filed a Notice of Dismissal (doc. 4) as to defendant Bay Area Contracting. Pursuant to Rule 41(a)(1)(A), Fed.R.Civ.P., that Notice of Dismissal is effective as filed; therefore, plaintiffs' claims against Bay Area Contracting have been dismissed without prejudice, and that entity is no longer a party to these proceedings. Second, they filed a First Amended Complaint (doc. 6), substituting a new defendant, H.O. Weaver & Sons, Inc., for Bay Area Contracting. In conjunction with that amended pleading, plaintiffs filed a Notice (doc. 5) explaining that when the Notice of Removal was filed, plaintiffs' counsel "recognized that they had, through inadvertence or mistake, incorrectly identified Bay Area Contracting as a party defendant," and that H.O. Weaver was the entity they had intended to name.[2] Significantly, H.O.

---

[2] The Affidavit of Edward McF. Johnson, one of plaintiffs' attorneys, explains what transpired as follows: "Prior to or during my preparation of the complaint, I learned that there had been a company who had performed asphalt and concrete reclamation on the International Paper site. … I received word from a client identifying 'Bay Area Contracting' as that company. (Continued)

Weaver is an Alabama corporation with its principal place of business in Alabama (doc. 6, ¶ 3); therefore, it is an Alabama citizen for diversity purposes, and is non-diverse from plaintiffs, all or substantially all of whom are likewise Alabama citizens.

The nature of the amended pleading's allegations concerning H.O. Weaver are of some import to the pending Motions; therefore, it is helpful to summarize them at this time. According to the First Amended Complaint, "H.O. Weaver operated a concrete and/or asphalt reclamation facility and otherwise did business on the property owned by International Paper located in or adjacent to the Africatown Community." (Doc. 6, ¶ 3.) It is alleged that Dioxins, Furans and related chemicals were a byproduct of International Paper's manufacturing process, and that "H.O. Weaver knew that as a result of its concrete and/or asphalt reclamation activities on the International Paper property, Dioxins and Furans and related chemicals would be discharged … from the plant site." (*Id.*, ¶ 21.) The First Amended Complaint further alleges that H.O. Weaver breached its duty to conduct operations on the International Paper site "in a manner such as to prevent the discharge and/or emission of Dioxins and Furans and other related chemicals." (*Id.*, ¶ 25.) Thus, plaintiffs' theory is that H.O. Weaver is liable because it engaged in "active disturbance of the International Paper property through [its] concrete and/or asphalt reclamation activities and other conduct," thereby "allow[ing] these toxins to migrate to and remain in the waterways, air, soil, surface water, and/or ground water." (*Id.*, ¶ 53.)

Now, both sides have submitted dueling motions, with federal jurisdiction hanging in the balance. For their part, plaintiffs filed a Motion to Remand this action to Mobile County Circuit Court, reasoning that H.O. Weaver's presence destroys complete diversity, thereby precluding diversity jurisdiction, that this action does not qualify as a "mass action" for CAFA purposes, and that even if it did, CAFA jurisdiction should be declined under the "local controversy" exclusion. Meanwhile, International Paper filed a Motion to Dismiss and/or Strike Plaintiffs' Amended Complaint, arguing that the amendment should be disallowed (and the Alabama

---

… I made no further inquiries of the client, and did not confirm the correctness of this information with any of the other lawyers working on this case prior to my filing of the complaint. Upon receipt of International Paper's Notice of Removal, I ascertained the name of the correct defendant and thereafter filed the First Amended Complaint." (Doc. 12-1, at 1-2.)

resident defendant excised from this case) pursuant to 28 U.S.C. § 1447(e). At the center of both motions is the status of H.O. Weaver.

## II. Analysis.

### A. *Diversity Jurisdiction and Section 1447(e).*

Under the diversity provisions of 28 U.S.C. § 1332, federal courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. *See, e.g., Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000.") (citations omitted). The Eleventh Circuit has instructed that "[i]n light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated … to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted).

Of course, as a general proposition, "[d]iversity jurisdiction requires complete diversity between named plaintiffs and defendants." *Sweet Pea Marine, Ltd. v. AJP Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). If H.O. Weaver is properly joined as a defendant, then complete diversity is lacking because both H.O. Weaver and substantially all plaintiffs are Alabama citizens for diversity purposes. International Paper's position, however, is that the First Amended Complaint improperly effectuates the post-removal joinder of a non-diverse defendant. On that basis, International Paper seeks to have the First Amended Complaint stricken or dismissed, with the result being that H.O. Weaver is out of the case, there is no diversity-destroying defendant, and federal diversity jurisdiction remains intact.

International Paper's argument is rooted in 28 U.S.C. § 1447(e), which provides as follows: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the state court." *Id.* Where, as here, a plaintiff seeks leave to amend a complaint to add a non-diverse defendant following removal to federal court on diversity grounds, the analysis is informed not by the liberal amendment principles of Rule 15(a)(2), but instead by the provisions of § 1447(e). *See Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 862 (11th Cir. 1998) (where plaintiff sought to amend complaint post-removal to join a defendant that would destroy

complete diversity, "in determining whether to grant [plaintiff]'s motion, the district court should have considered 28 U.S.C. § 1447(e)"); *Churchey v. Safeco Ins. Co. of Ill.*, 2017 WL 887188, *1 (S.D. Fla. Feb. 2, 2017) ("The potential loss of complete diversity means that it is 28 U.S.C. § 1447(e) – and not Rule 15(a), Fed.R.Civ.P. – that governs the decision whether to give the Plaintiff leave to amend."). This section confers discretion upon the district court to decide whether to allow a diversity-destroying amendment in a particular case.[3] The factors governing the exercise of that discretion include the following: (1) the extent to which the amendment's purpose is to defeat federal jurisdiction; (2) whether the plaintiff was dilatory in seeking the amendment; (3) whether the plaintiff would be significantly injured if the amendment were disallowed; and (4) other equitable considerations. *See, e.g., Thomas v. Eight Mile Nursing & Rehab Center LLC*, 2015 WL 1778359, *2 (S.D. Ala. Apr. 20, 2015). "This framework is designed to facilitate the balancing of the defendant's interest in maintaining a federal forum with the competing interest disfavoring parallel lawsuits in federal and state courts." *Starnes Davis Florie, LLP v. GOS Operator, LLC*, 2012 WL 3870413, *3 (S.D. Ala. Sept. 5, 2012) (citation omitted).

Upon careful consideration of the § 1447(e) factors and balancing the equities, the Court finds that the amendment is allowable. For starters, the record convincingly rebuts any notion that plaintiffs sought to add H.O. Weaver for the purpose of defeating federal jurisdiction. Since the inception of this action in state court, plaintiffs have consistently pleaded that the alleged contamination was caused not only by International Paper's emission of harmful chemicals from its facility near the Africatown Community, but also by another entity's active disturbance of the International Paper site during asphalt or concrete reclamation activities at that location. Plaintiffs' theory has always been that the environmental and health injuries of which they complain were caused both by International Paper discharging the toxins in the first place and by a third party's further release and dispersal of those substances during on-site reclamation activities. This is not a half-baked notion cooked up by plaintiffs' counsel in the aftermath of

---

[3] *See, e.g., Bruce v. Golden Corral Corp.*, 2016 WL 7105866, *2 (M.D. Ala. Dec. 5, 2016) ("Under § 1447(e), the court has discretion when deciding whether to allow amendment."); *Johnson v. Dirt Cheap, LLC*, 2015 WL 9699494, *2 (S.D. Ala. Nov. 13, 2015) ("Under § 1447(e), it is the court's discretion whether to grant or deny such a post-removal motion to amend a complaint.").

removal as a desperate scheme to get the case sent back to state court; to the contrary, the essence of plaintiffs' claims has always been as described. Moreover, plaintiffs have submitted an expert affidavit opining that the activities ascribed to H.O. Weaver in the First Amended Complaint "would have, to a reasonable degree of scientific certainty, significantly caused and contributed to the continued release and dispersal of these toxic substances through the air and into the neighboring community." (Parette Aff. (doc. 19-4), at 2.) These circumstances simply do not support any reasonable inference that plaintiffs were motivated by nefarious, forum-shopping objectives in crafting their First Amended Complaint. Rather, that amended pleading simply presented the claims that plaintiffs had always intended to bring, under theories that plaintiffs had always intended to raise, against defendants that plaintiffs had always intended to sue.

To be sure, the timing of plaintiffs' attempt to add H.O. Weaver, a non-diverse defendant, barely a week after International Paper removed the action to federal court on diversity grounds, may appear suspect. But closer inspection dissipates any cloud of inequity. Throughout this litigation, plaintiffs always sought to sue two entities whose conduct had combined to cause their alleged injuries, to-wit: International Paper and the entity that engaged in the concrete/asphalt reclamation activities on the International Paper site. In the original Complaint, plaintiffs identified that entity as Bay Area Contracting, Inc. Plaintiffs' counsel now acknowledge that they misidentified the concrete/asphalt reclamation entity as a result of mistake or inadvertence, and explain that their error did not become apparent until the Notice of Removal was filed. At that point, counsel acted promptly and decisively to dismiss Bay Area Contracting as a defendant, identify H.O. Weaver as the correct defendant, and file an amended pleading naming the properly identified party. Based on the information before the Court, all appearances are that the misidentification of Bay Area Contracting was a good-faith error, and that H.O. Weaver was the entity that plaintiffs had intended to name as a defendant all along. Under the circumstances, the Court cannot and does not conclude that the purpose of plaintiffs' First Amended Complaint was to defeat federal jurisdiction; rather, it was to correct a mistaken identification by plaintiffs' counsel and to join the second defendant that plaintiffs had always sought to join.[4]

---

[4] In arguing otherwise, International Paper maintains that H.O. Weaver was fraudulently joined "because there is no connection between Weaver Co. and the claims in this (Continued)

The other § 1447(e) factors all point in the same direction as the "purpose of the amendment" factor. As noted, the second factor is whether the plaintiffs have been dilatory in seeking amendment. They have not. To the contrary, within days after learning of their

---

case." (Doc. 16, at 8.) Defendant is correct that fraudulent joinder may be found "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). But the scenario described in the First Amended Complaint – that plaintiffs have sustained injuries to their health and property because of both International Paper's conduct in releasing harmful chemicals and H.O. Weaver's conduct in actively disturbing the International Paper site and causing further releases of those same substances – is one that, if proven, would support joint and several liability. As for H.O. Weaver's connection to the dispute, plaintiffs submit affidavits from two witnesses averring that they saw dump trucks moving back and forth between the International Paper site and the "Hosea Weaver asphalt plant site" over a period of months, during which workers were digging up concrete from the International Paper site, grinding it up, and loading it into those dump trucks. (Womack Aff. (doc. 19-1); Rushdan Aff. (doc. 19-2).) Such facts, if proven at trial, would establish a significant connection between H.O. Weaver and this controversy; therefore, the Court cannot credit International Paper's assertion that H.O. Weaver is fraudulently joined as a defendant because it lacks any connection to this dispute. International Paper has not satisfied its heavy burden of showing fraudulent joinder of the resident defendant. *See generally Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011) ("[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper") (citation omitted). On the record before it, the Court readily concludes that H.O. Weaver's joinder is proper. This conclusion is not altered by the supplemental Declaration of Paul E. Weaver (doc. 22, Exh. 1) filed by International Paper on May 1, 2017. To be sure, Mr. Weaver avers that plaintiffs' witnesses are wrong, that H.O. Weaver had no involvement in that project, and that plaintiffs' affidavits "are not true" in alleging that trucks were hauling crushed concrete back and forth from the International Paper site to the Hosea Weaver asphalt plant site in dump trucks. (Weaver Decl., ¶ 7.) Plainly, there are disputed facts here. But the Court cannot find on this showing that there is "no possibility" that the Complaint states a cause of action against H.O. Weaver, or that International Paper has met its heavy burden of proving that H.O. Weaver has no connection to the claims in this case. The doctrine of fraudulent joinder erects a high bar, and good-faith factual disputes between the parties (through their respective witnesses, each of whom has submitted an unambiguous statement that the resident defendant did or did not engage in these reclamation activities) over a defendant's involvement (or lack thereof) in the alleged tortious conduct does not surpass that high bar. In the fraudulent joinder context, courts do not hold hearings or mini-trials to assess the credibility of competing witnesses; rather, such material factual disputes establish at least a possibility of relief, thereby negating application of the fraudulent joinder doctrine.

mistaken identification of the entity involved in the asphalt/concrete reclamation activities, plaintiffs dismissed their claims against Bay Area Contracting and amended their Complaint to name H.O. Weaver as an additional defendant. Such prompt corrective action cannot reasonably be characterized as "dilatory" for § 1447(e) purposes. The third factor is whether plaintiffs would be significantly injured if the amendment were disallowed. If plaintiffs were not allowed to proceed against H.O. Weaver in this action, they would be placed in the unenviable position of having to maintain parallel proceedings against H.O. Weaver in state court and against International Paper in federal court, with the attendant inefficiencies and additional expense that entails. It is, of course, debatable how "significant" that injury to plaintiffs would be, but it would be an injury nonetheless. *See Starnes*, 2012 WL 3870413, at *4 ("Through such a two-headed litigation approach, Starnes could indeed obtain complete relief. But at what cost? The redundancy, duplication of effort and expense, and multiplication of proceedings inherent in such parallel litigation is an injury to plaintiff that certain courts have deemed sufficient to satisfy this factor."). For the fourth § 1447(e) factor, International Paper has identified no other equitable considerations that might favor disallowing the amendment in this case. (Doc. 16, at 12.)

For all of these reasons, the Court exercises its discretion under 28 U.S.C. § 1447(e) to allow plaintiffs' First Amended Complaint (doc. 6) to stand as filed. Defendant International Paper's Motion to Dismiss and/or Strike (doc. 16) is **denied**.

### B. *Jurisdiction under the Class Action Fairness Act.*

With the allowance of the amendment, there is no longer complete diversity between plaintiffs and defendants, inasmuch as plaintiffs and H.O. Weaver are both Alabama citizens for diversity purposes. This circumstance would appear to mandate remand under the plain terms of the statute. *See* 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, *or permit joinder and remand the action to State court*.") (emphasis added). As a fallback position, however, International Paper argues that subject matter jurisdiction remains intact, even with the joinder of H.O. Weaver, under the Class Action Fairness Act of 2005 ("CAFA").[5]

---

[5] "Congress enacted CAFA to address inequitable state court treatment of class actions and to put an end to certain abusive practices by plaintiffs' class counsel. … CAFA seeks to address these inequities and abusive practices by, among other things, broadening federal (Continued)

"CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co. v. Owens*, --- U.S. ----, 135 S.Ct. 547, 552, 190 L.Ed.2d 495 (2014); *see also South Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (similar). In the CAFA removal context, the Eleventh Circuit has recently opined that "the defendants bear the burden of demonstrating that the parties are properly in federal court." *Life of the South Ins. Co. v. Carzell*, 851 F.3d 1341, 1344 (11th Cir. 2017). The parties do not dispute – and the Court perceives no basis for questioning – that the numerical threshold, minimal diversity and amount in controversy requirements are satisfied here.

### 1. *"Mass Action" Definition Excludes a Local Event or Occurrence.*

This case is not postured as a class action, but rather involves the claims of 248 named plaintiffs. Nonetheless, International Paper maintains that this action falls within CAFA's purview because it is a "mass action" within the meaning of the statute. Section 1332(d) provides that "a mass action shall be deemed to be class action removable under [CAFA] if it otherwise meets the provisions of those paragraphs." 28 U.S.C. § 1332(d)(11)(A). "[F]or a *mass action* to be brought under CAFA, however, additional jurisdictional requirements must exist." *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1122 n.5 (11th Cir. 2010). Significantly, CAFA excludes from the definition of "mass action" any civil action in which "all of the claims arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State." 28 U.S.C. § 1332(d)(11)(B)(ii)(I). This is known as the "local event or occurrence" exception to mass action status for CAFA coverage purposes.

The core of the parties' dispute as to CAFA's applicability is whether the First Amended Complaint alleges an event or occurrence that would place this action outside the scope of CAFA's mass action provisions.[6] The phrase "event or occurrence" is not defined in the statute.

---

diversity jurisdiction over class actions with interstate implications." *Blevins v. Aksut*, 849 F.3d 1016, 1019 (11th Cir. 2017) (citations omitted).

[6] International Paper argues that § 1332(d)(11)(B)(ii)(I) is a statutory exclusion as to which the burden of proof rests with plaintiffs, as the parties seeking remand. (Doc. 16, at (Continued)

International Paper argues that § 1332(d)(11)(B)(ii)(I) is confined to mean "a truly singular happening," as opposed to "an action for continuing pollution over decades." (Doc. 16, at 18.) However, considerable persuasive authority has not construed this exception as so narrowly constrained to wrongs occurring at a singular moment in time. *See, e.g., Abraham v. St. Croix Renaissance Group, L.L.L.P.*, 719 F.3d 270, 280 (3rd Cir. 2013) ("we find no error in the District Court's conclusion that the 'continuous release' of hazardous substances from SCRG's premises constituted 'an event or occurrence' for purposes of the mass-action exclusion in § 1332(d)(11)(B)(ii)(I)"); *Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405, 410 (5th Cir. 2014) (for purposes of the "local event" exception, "the event or occurrence need not be constrained to a discrete moment in time"); *Lowery v. Honeywell Int'l, Inc.*, 460 F. Supp.2d 1288, 1300 (N.D. Ala. 2006) (where plaintiffs claimed their land had been contaminated by ongoing discharge of air pollutants, opining that "it facially appears that the language" of § 1332(d)(11)(B)(ii)(I) "will prevent the action from constituting a 'mass action', and will destroy CAFA removability"); *Allen v. Monsanto Co.*, 2010 WL 8752873, *10 (N.D. Fla. Feb. 1, 2010) (in case involving ongoing release of PCB toxins into local waterway, opining that "so long as

---

16.) To be sure, it is a correct statement of law that the party seeking remand bears the burden as to express statutory exceptions to CAFA jurisdiction. *See Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006) ("CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction. … However, when a party seeks to avail itself of an express statutory exception to federal jurisdiction granted under CAFA, as in this case, we hold that the party seeking remand bears the burden of proof with regard to that exception."). But § 1332(d)(11)(B)(ii)(I) is not properly viewed as a statutory exception to jurisdiction; rather, it merely defines what is or is not a "mass action" for CAFA purposes. Therefore, the burden of proof on this issue properly rests with International Paper. *See Allen v. Monsanto Co.*, 2010 WL 8752873, *3 (N.D. Fla. Feb. 1, 2010) ("Section 1332(d)(11)(B)(i) defines what a mass action is, while Section 1332(d)(11)(B)(ii) defines what a mass action is not. Section 1332(d)(11)(B)(ii) is therefore not an exclusionary provision whereby the exercise of jurisdiction could or should be refused over a case that otherwise qualified; rather it is a provision that outlines what is simply not a mass action. … [I]t is not subject to the *Evans* holding, and therefore the burden of proof remains with Defendants and the presumption favoring remand is still observed."). That said, the reasoning and result here do not turn on the allocation of the burden of proof or the presumption favoring remand. Thus, if plaintiffs bear the burden of establishing that the § 1332(d)(11)(B)(ii)(I) exclusion to the "mass action" definition applies, then the Court would conclude that plaintiffs have met that burden for the reasons set forth herein. No matter where the burden lies, this action simply does not qualify as a "mass action" within CAFA's definitional boundaries.

the event is relatively uniform and ongoing in nature and is not interrupted by some other interceding event of sufficient weight or importance, it remains a single event or occurrence within the meaning of" § 1332(d)(11)(B)(ii)(I)); *Hamilton v. Burlington Northern Santa Fe Ry. Co.*, 2008 WL 8148619, *12 (W.D. Tex. Aug. 8, 2008) ("The Court declines to limit the 'local occurrence' exception to a single, discrete event as Defendants urge."); *see generally Adams v. Macon County Greyhound Park, Inc.*, 829 F. Supp.2d 1127, 1135 (M.D. Ala. 2011) (citing without criticism unpublished district court authority from the Northern District of Alabama remanding a case pursuant to § 1332(d)(11)(B)(ii)(I) where employees of a manufacturing plant "alleged they were injured by a toxic chemical used at the plant" and that "the facts were more similar to an environmental tort such as a chemical spill" at a single location, which would be an event or occurrence, than products liability cases involving the sale of a product to different people, which would not be an event or occurrence).

In response to these decisions, International Paper touts *Allen v. Boeing Co.*, 784 F.3d 625 (9th Cir. 2015), in which the Ninth Circuit determined that the phrase "event or occurrence" in § 1332(d)(11)(B)(ii)(I) is properly read "as referring to a single happening." *Id.* at 633. However, the Ninth Circuit appears aberrational in its narrow construction of the phrase, and its approach has been sharply criticized.[7] Reading the statutory language as applying only to a singular moment in time is not persuasive for several reasons. First, "the words 'event' and 'occurrence' do not commonly or necessarily refer in every instance to what transpired at an isolated moment in time," so no assumption that Congress intended such a restrictive meaning is warranted. *Abraham*, 719 F.3d at 277. Second, "Congress clearly contemplated that some mass actions are better suited to adjudication by the state courts in which they originated," such that "aggregate actions with substantial ties to a particular state remain in the courts of that state." *Id.* at 277-78. That is exactly what we have here. Third, the legislative history confirms that "[t]he purpose of this exception was to allow cases involving environmental torts such as a chemical spill to remain in state court if both the event and the injuries were truly local, even though there

---

[7] *See Rainbow Gun Club*, 760 F.3d at 412 (rejecting Ninth Circuit view because "its limited analysis does not overcome the text of the statute, the legislative history, and the unambiguous and compelling analysis of the Third Circuit in *Abraham*").

are some out-of-state defendants." S.Rep. No. 109-14, 2005 WL 627977, *47 (2005).[8] What plaintiffs have alleged in their First Amended Complaint are environmental torts occurring at a truly local level, in terms of both the wrongful conduct and the resulting injuries. In light of the foregoing, the Court declines to adopt the Ninth Circuit's reading of § 1332(d)(11)(B)(ii)(I). Rather, the Court agrees with the Third Circuit that "where the record demonstrates circumstances that share some commonality and persist over a period of time, these can constitute 'an event or occurrence' for purposes of the exclusion in § 1332(d)(11)(B)(ii)(I)." *Abraham*, 719 F.3d at 277.

Nor is the result altered by International Paper's contention that the First Amended Complaint's allegations of tortious conduct by two defendants (International Paper and H.O. Weaver) are fundamentally incompatible with the "local event or occurrence" exception to "mass action" status for CAFA purposes. The Ninth Circuit has opined that § 1332(d)(11)(B)(ii)(I) is inapplicable where "Plaintiffs' action asserts claims against two distinct defendants for at least two separate activities." *Allen*, 784 F.3d at 633. In International Paper's view, plaintiffs are suing it for paper-making activities and H.O. Weaver for asphalt-grinding activities, which are

---

[8] That same legislative history goes on to elaborate that "[b]y contrast, this exception would not apply to a product liability or insurance case. The sale of a product to different people does not qualify as an event. And the alleged injuries in such a case would be spread out over more than one state (or contiguous states) – even if all the plaintiffs in the particular case come from one state." *Id.* The circumstances delineated in the First Amended Complaint are "environmental torts" based on a purely local event with purely local injuries, as contrasted with the "product liability or insurance case" or "[t]he sale of a product to different people," which Congress did not intend as falling within this carve-out from the "mass action" definition for CAFA purposes. *See generally Rainbow Gun Club*, 760 F.3d at 411 (acknowledging interpretation that "the purpose of the exclusion was specifically to keep local environmental torts out of federal court," and opining that "Plaintiffs' claims are more akin to an environmental tort than a product liability or insurance action," favoring application of the exclusion); *Allen*, 2010 WL 8752873, at *8 ("[E]nvironmental torts are specifically mentioned in the Commentary as an example [of] the type of local action not subject to the mass action statute. Indeed, courts have found similar environmental cases to be properly excluded from the definition of mass action."); *Carr v. Arvin Industries*, No. 05-J-1283-J, *slip op.* at 17-18 (N.D. Ala. July 20, 2005) ("[P]laintiffs here claim their employer, located in Fayette County, Alabama, allowed them to be exposed to toxic substances in Fayette County, Alabama. … Their alleged injuries occurred at one specific location in Alabama. The court is of the opinion this is more akin to the 'environmental tort such as a chemical spill' example given in the Senate Record, than a 'product liability … case'.") (doc. 22-1).

"distinct and separate conduct" that cannot amount to a single local event within the meaning of the statute. (Doc. 16, at 18-19.) But the facts are nothing like the Ninth Circuit's case in *Allen*, wherein plaintiffs were suing one defendant for using hazardous solvents at its manufacturing plant and the other defendant for negligently investigating and remediating the contamination and failing to warn plaintiffs. Those were, at least arguably, two separate sets of conduct constituting at least two distinct events.

Here, by contrast, the Amended Complaint alleges a single course of conduct, to-wit: The continuous release of toxic pollutants from the International Paper site into the Africatown Community over an extended period of time. According to the well-pleaded factual allegations in that pleading, International Paper caused the continuous release of those chemicals from that site via its manufacturing activities, and H.O. Weaver exacerbated the discharge of the same chemicals from that same location by actively disturbing the site during its reclamation activities. Despite International Paper's attempts to disaggregate this conduct into separate events or occurrences so as to place this case outside the boundaries of § 1332(d)(11)(B)(ii)(I), the Court finds that the pleaded conduct is properly classified as a single event or occurrence, to-wit: The continuous release of Dioxins, Furans and other hazardous chemicals and pollutants from the International Paper site onto plaintiffs' properties. That defendants are alleged to have participated in that single event or occurrence in different ways does not necessitate a conclusion that there were actually multiple events or occurrences. *Allen v. Boeing* is distinguishable, and International Paper identifies no case with comparable facts in which a court has held otherwise. Indeed, the Fifth Circuit expressly rejected reasoning very similar to International Paper's. *See Rainbow Gun Club*, 760 F.3d at 413 ("The plaintiffs allege that Denbury performed several negligent acts, and the result of those acts was a single occurrence …. The Plaintiffs' claims do not arise from any one of the several alleged acts of negligence, ***but from the single occurrence that resulted from the collective related acts***. Thus, we cannot embrace [defendant]'s argument the Plaintiffs' claims arise from multiple events or occurrences because the Plaintiffs alleged several negligent acts.") (emphasis added); *see also Abraham*, 719 F.3d at 280 (rejecting argument that plaintiffs' claims arose from multiple events or occurrences where, despite various alleged wrongful acts by defendant such as using harmful solvents and failing to remediate the site, "[t]here is simply the ongoing emission from the site of the red mud and its hazardous substances"). Here, the First Amended Complaint alleges that the property contamination and

health hazard were caused by a single occurrence (i.e., the ongoing migration of harmful substances from the International Paper site) resulting from multiple acts by defendants. These circumstances fall squarely within the § 1332(d)(11)(B)(ii)(I) exception to "mass action" status.

For all of these reasons, the Court concludes that this case does not qualify as a "mass action" for CAFA purposes. As such, this action was not properly removable under the provisions of § 1332(d), and federal jurisdiction is lacking.

### 2. *"Local Controversy" Exclusion from CAFA.*

Alternatively, even if this action did not qualify for the "local event or occurrence" exception of 28 U.S.C. § 1332(d)(11)(B)(ii)(I), it would remain beyond CAFA's effective reach. The statute's "local controversy" exclusion provides that "[a] district court shall decline to exercise jurisdiction" over class actions in which all of the following requirements are satisfied: (i) "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;" (ii) "at least 1 defendant is a defendant from whom significant relief is sought by members of the plaintiff class whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and who is a citizen of the State in which the action was originally filed;" (iii) "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed;" and (iv) "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants." 28 U.S.C. § 1332(d)(4)(A). Plaintiffs, as the parties objecting to removal jurisdiction, "have the burden of proving the local controversy exception." *Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1165 (11th Cir. 2006).

There is no dispute that most elements of the "local controversy" exclusion are present here. In particular, the First Amended Complaint reflects that more than two-thirds of the named plaintiffs are citizens of Alabama, where this action was originally filed. (Doc. 6, ¶ 11.) The alleged property damage and personal injuries for which plaintiffs seek relief from International Paper and H.O. Weaver appear to have occurred exclusively in the State of Alabama, and indeed exclusively in Mobile County, Alabama. (*Id.*, ¶¶ 14, 16.) And plaintiffs have affirmatively pleaded that no other class actions or mass actions have been filed asserting the same or similar factual allegations against either defendant on behalf of plaintiffs or anyone else. (*Id.*, ¶ 15.) The only point of contention as to the local controversy exclusion's application here is whether

-14-

H.O. Weaver is "a defendant from whom significant relief is sought" and "whose conduct forms a significant basis for the claims asserted." In arguing that this element is not satisfied, International Paper relies exclusively on its previously-addressed fraudulent joinder argument (*i.e.*, that H.O. Weaver has no real connection to the controversy). The Court has already considered and rejected this contention, *supra*, and has determined that H.O. Weaver was not fraudulently joined. The First Amended Complaint reflects that plaintiffs do, in fact, seek significant relief from H.O. Weaver based on its alleged conduct in actively disturbing the International Paper site and causing the ongoing dispersal of toxic substances into the air. And such conduct forms a significant basis for plaintiffs' claims. In that regard, plaintiffs have offered the opinion of an environmental engineer that the activities H.O. Weaver is accused of performing "significantly caused and contributed to the continued release and dispersal of these toxic substances through the air and into the neighboring community." (Parette Aff. (doc. 19-4), at 2.) And of course, H.O. Weaver is an Alabama citizen. (Doc. 6, ¶ 3.) This element is satisfied.

On this record and on these arguments, the Court finds that plaintiffs have met their burden of showing that declination of jurisdiction is appropriate under the "local controversy" exception to CAFA, as codified at 28 U.S.C. § 1332(d)(4)(A). This conclusion constitutes an alternate ground for the Court's determination that CAFA jurisdiction is not properly exercised here. Thus, even if this case falls within the statutory definition of a "mass action" (and the Court has found that it does not, because of the "local event or occurrence" exclusion), remanding this action would remain appropriate under CAFA pursuant to the "local controversy" basis for declining jurisdiction.

### III. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Defendant International Paper's Motion for Leave to File Supplemental Affidavit in Opposition to Plaintiffs' Motion to Remand (doc. 22) is **granted**;
2. Defendants' Motion to Dismiss and/or Strike Plaintiffs' Amended Complaint (doc. 16) is **denied**;
3. The Court exercises its discretion under 28 U.S.C. § 1447(e) to allow plaintiffs' First Amended Complaint, including specifically their claims against the non-diverse defendant, H.O. Weaver & Sons, Inc., to stand;

4. Plaintiffs' Motion to Remand (doc. 11) is **granted** because H.O. Weaver was not fraudulently joined, complete diversity is lacking, and CAFA jurisdiction is inappropriate pursuant to each of 28 U.S.C. § 1332(d)(11)(B)(ii)(I) (not a "mass action" within the statutory definition) and 28 U.S.C. § 1332(d)(4)(A) ("local controversy" exception because H.O. Weaver is an Alabama citizen as to whom plaintiffs seek significant relief and whose alleged conduct forms a significant basis for the claims asserted); and

5. This action is **remanded** to the Circuit Court of Mobile County, Alabama for further proceedings.

DONE and ORDERED this 5th day of May, 2017.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE